# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KEVIN CULBERTSON, MARIA GONZALEZ, and GRACE CONDON, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation<br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Kevin Culbertson ("Culbertson), Maria Gonzalez ("Gonzalez"), and Grace Condon ("Condon") (collectively, "Plaintiffs") bring this class action complaint individually and on behalf of all others similarly situated against Home Depot U.S.A., Inc. ("Defendant" or "Home Depot"). The allegations contained in this class action complaint are based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, including further investigation conducted by Plaintiffs' counsel, as to the remainder.

## I.    NATURE OF THE ACTION

1.    Advertised "sale" prices are important to consumers. Consumers are more likely to purchase a product if they believe that they are getting a good deal or purchasing that item at a "bargain" price. Further, if consumers believe that the reduced price will end soon, they are more likely to buy now, rather than wait or comparison shop, and buy something else. (*See*, Ngwe, Donald, "Fake Discounts Drive Real Revenues in Retail," Harvard Business School Working Paper (2018), at 1-2.)

2.    While legitimate sales are entirely proper and legal, deceptive sales— i.e. "sales" with fictitious original or former prices, made-up discounts, and made-up expirations—are misleading and illegal.

3.    This is an action against Home Depot for false reference pricing on its website, www.homedepot.com (the "Website"), and at its in-store locations.

4.     By way of background, a marketing strategy that businesses often use to promote sales is known as "strikethrough pricing" or "false reference pricing," which is when a seller advertises the "former" price of a product, which is then crossed out and replaced with a purportedly "discounted" price, either next to the stricken price or revealed after a consumer adds the item to his or her online shopping cart. Such schemes have at least two purposes: (1) to induce consumers to make a purchase under the false belief that they are getting a bargain, and (2) to create a false sense of urgency that the purported "sale" will end and then the consumer will have to pay the "full" price for the item. In reality, however, the consumer is not getting a bargain – he is simply buying it at or around the prevailing market price – and the "sale" is perpetual because the lower "sale" price never returns to the higher "former" price.

5.     To illustrate, below is a screengrab from Home Depot's website for the GE electric dryer purchased by Plaintiff Culbertson on January 2, 2024, which has a "former" (strikethrough or false reference) price of $779.00. Mr. Culbertson added the item to his cart and purchased the dryer at a "sale" price of $528.00, thus resulting in a "discount" of $251.00 or 32%.





See Lower Price in Cart

★★★★½ (13815)
Model# GTD42EASJWW

**GE**
7.2 cu. ft. Electric Dryer in White with
Wrinkle Care

However, as explained further herein, it appears that Home Depot *never* advertised

or sold this item for $779.00 in the three months before Mr. Culbertson purchased it

on January 2, 2024. That is, the price for which Home Depot actually sold this item

fluctuated between $498.00 (36% "discount") and $548.00 (30% "discount") the

entire time, meaning the $779.00 "former" price was fake and the 30-36%

"discount" was also fake.

6.      More importantly, at no time within the three months immediately

preceding the publication of the advertised "former" price of $779.00 was the

"former" price the prevailing market price, i.e., Home Depot's competitors in the market were selling the same item during the same timeframe for the same price – approximately $500-$550 – just like Home Depot was. As this example illustrates, the artificially-created 32% "discount" between the fake "former" price and the purported "sale" price misleads consumers into believing the product has a higher market value that it actually does, thus leading them to believe they are getting the item for a bargain, thus inducing them to purchase the product without realizing the truth: that there was no "sale," there was no "discount." In reality, the purported "sale" price is essentially the same price consumers would have paid for the same item at Home Depot's competitors during the same timeframe. Furthermore, the creation of a fake "sale" or "discount" creates a false sense of urgency which induces customers to purchase the item out of concern that the non-existent "sale" will end and they will lose out on the "discount," meaning many consumers forego comparing prices for the same item at other retailers that were actually selling the same item for substantially *less* than Home Depot[1]. Based on Home Depot's representations, Plaintiffs believed that they were purchasing products whose regular price and market value was the purported "regular" or "former" price that Home Depot advertised, that they were receiving a substantial discount, and that the

---

[1] During the three months immediately preceding Mr. Culbertson's January 2, 2024, purchase of the GE dryer for $548.00, for example, one of Home Depot's competitors was selling the same item for $497.00.

opportunity to get that discount was seemingly time limited. These reasonable beliefs were what led Plaintiffs to buy from Home Depot when they did.

7.      In reality, however, Home Depot's represented prices were not true. The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were not necessarily time limited.

8.      This conduct artificially increases demand for the deceptively priced products and induces customers to pay more than the prevailing market price based on an impression of the products' falsely inflated value.

9.      The products at issue include all goods that have at any time been offered at Home Depot, either on the website or at one of Home Depot's store locations, at a sale or discounted price from a higher "former" or "regular" price, including, but not limited: tools, home equipment, appliances, and other products.

10.      Consumers who visit Home Depot and buy an item on "sale" from a stricken former or "reference" price are being misled by Home Depot. This is because that item has not been advertised for sale or sold, during the relevant statutory period, at the former price. Defendant's use of inflated reference prices, strikethrough pricing and "discounting," and implied limited time sales, all lead reasonable consumers to believe that the products in fact had been listed for sale and sold at Home Depot at the former price, during, at a minimum, the relevant statutory

period, or for a substantially longer period of time.  Moreover, in contrast, Defendant offers for sale non-discounted, regularly priced items that are not on "sale," not with false former pricing, and which do not use strikethrough pricing at all.

11.     On information and belief, all or nearly all the strikethrough prices on the website and in the store are false and misleading. They are not former or "regular" prices at which the products were offered for sale in the relevant statutory period or for a substantial time, if at all[2]. They are inflated prices advertised to entice consumers into purchasing items from Defendant.

12.     Reasonable consumers reasonably believe that the "regular" prices Home Depot advertises represents the true market value of the products and are the prevailing prices for those products, and that they are receiving reductions from those "regular" prices in the amounts advertised. Accordingly, when consumers purchased these products at a manufactured "discounted" price, consumers did not receive the product they believed they received at full value and purchased at a discount. To illustrate, assume a company knows a product will sell in the

---

[2] On information and belief, Home Depot never sells its items at the higher "former" price. After all, if Home Depot sold a particular model of refrigerator for $3,000.00, but Lowe's and Best Buy sold the same refrigerator for $2,000.00 at the same time, Home Depot would not sell very many of those refrigerators. So, instead, Home Depot does something like the following to remain competitive and exploit its false pricing scheme: $3,000.00; "sale price" $2,100.00, save $900 (30%). Thus, by creating the fake "sale" and "discount," Home Depot can induce consumers (as described above) to purchase the same refrigerator as is being sold by Home Depot's competitors, but for $100 more than the prevailing market price of $2,000.00.

marketplace at $40. But to motivate consumers psychologically and thus increase revenue and capture market share, the company advertises the product as having a "regular" price of $80 and being on "sale" at 50% off (i.e., $40 off). Because consumers value products based on the false reference price, a product falsely advertised at 50% off leads the consumer to believe he is getting an item worth $80 for $40. The consumer thinks he is getting a good deal, but in reality, he has been fleeced. The misrepresentation also creates a false sense of urgency and thus consumers make purchases they would not otherwise have made.

13.    As a result of this psychological baiting, consumers are not only deceived into spending money they otherwise would not have spent, but also purchasing items they would not have purchased, and spending more money for an item than they otherwise would have, had Defendant not engaged in false advertising.

14.    Consumers also rely on retailers to provide accurate reference prices. For expensive, infrequently purchased items such as appliances, consumers do not have reference points to gauge accurate pricing.  Deception is likely to be greater due to this lack of pricing knowledge.

## II.    PARTIES

15.    Plaintiff Kevin Culbertson is a resident of the State of California and County of San Mateo. He was present in San Mateo County at the time he made his

purchase from Home Depot's website.

16.    Plaintiff Maria Gonzalez is a resident of the State of California and County of Merced. She was present in Merced County at the time she made her purchase from Home Depot's website.

17.    Plaintiff Grace Condon is a resident of the State of California and County of Alameda. She was physically present when she made her purchase from Home Depot's store in Oakland, Alameda County, California.

18.    Defendant Home Depot is a Delaware corporation. Defendant is an online and brick-and-mortar retailer of home and gardening products, including without limitation appliances, tools, outdoor equipment, home equipment, furniture, garden equipment, and hundreds of other categories. Through its website and physical stores, Defendant sells its products to consumers in California and nationwide. Defendant is headquartered in Atlanta, Georgia.

## III.    JURISDICTION & VENUE

19.    This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Home Depot has its corporate headquarters in Atlanta, Georgia, and is thus subject to general personal jurisdiction in this district. This district is an appropriate venue for this action because a substantial part of the events giving rise to the claims at issue occurred at Home Depot's headquarters here, including decisions about its marketing and sales practices.

## IV.    GENERAL ALLEGATIONS

### A.    Company Background

21.    Home Depot was "founded in 1978."[3]  "Today, The Home Depot is the world's largest home improvement retailer with approximately 475,000 orange-blooded associates and more than 2,300 stores in the U.S., Canada and Mexico. The typical store today averages 105,000 square feet of indoor retail space, interconnected with an e-commerce business that offers more than one million products for the DIY customer, professional contractors, and the industry's largest installation business for the Do-It-For-Me customer."[4]

22.    Defendant, through the website and in-store, has sold millions of units of merchandise to consumers nationwide.

---

[3] https://corporate.homedepot.com/page/about-us
[4] *Id.*

**B.    Defendant's False and Deceptive Pricing Scheme**

**1.    The Products Are Not Sold at Home Depot at the Former Reference Prices**

23.    Defendant's business model relies on deceiving consumers with false or misleading advertisements.

24.    On any given date, many products at Home Depot are represented as being discounted from a substantially higher reference or former price. Upon information and belief, products are offered at the same prices both in-store and on Home Depot's website. On individual listing pages on Home Depot's website, for example, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price, and "Save $__" or "Save __%". A representative example is shown below. (For some products, the sale prices are only shown when added to a customer's cart to further incentivize a purchase.)



25.    Defendant employs these deceptive tactics to falsely convey to customers that the product was formerly listed or sold on the website at the reference

price, in the recent past and for a substantial period of time, but is now being listed and sold to the customer at a substantial discount.

26.     However, the higher reference price is a falsely inflated price because Defendant rarely, if ever, lists or sells items at the reference price that it displays on its website. The sole purpose of the reference price is to mislead customers into believing that the displayed reference price is a former or regular price at which Defendant sold the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount, thus inducing them to make a purchase before the "sale" ends. Representative examples of such false and misleading advertising, i.e., products having never been sold at the false reference price over the course of several months, are shown below.

    a.    <u>Samsung 31 cu. ft. Mega Capacity 4-Door French Door Refrigerator with Dual Auto Ice Maker in Stainless Steel</u>

        i.    04/12/2024: $1698.00 (sale price); $2399.00 (former price)



        ii.    11/14/2023: $1598.00 (sale price); $2399.00 (former price)

    b.    <u>LG 24 in. Stainless Steel Front Control Dishwasher QuadWash, Third Rack, & Dynamic Dry, 48 dBA</u>

        i.    04/10/2024: $528.00 (sale price); $849.00 (former price)



        ii.    11/23/2023: $548.00 (sale price); $849.00 (former price)

    c.    <u>GE 24 in. Built-In Tall Tub Front Control White Dishwasher with 60dBA, ENERGY STAR</u>

        i.    04/11/2024: $328.00 (sale price); $443.00 (reference price)



        ii.    03/26/2023: $368.00 (sale price); $443.00 (former price)

    d.    <u>GE 24 in. Built-In Tall Tub Top Front Control Stainless Steel Dishwasher with 60 dBA, ENERGY STAR</u>

        i.    04/11/2024: $328.00 (sale price); $532.00 (former price)



        ii.    11/29/2023: $348.00 (sale price); $532.00 (former price)

27.     On information and belief, this is not a new or isolated sales practice by Defendant, but a practice that has continued consistently for years throughout the statutory period and is still ongoing.

28.     These pricing and advertising practices are deceptive and pressure consumers into purchasing products from Defendant at an inflated price out of fear that they will miss out on a limited-time sale. Defendant intends to mislead consumers into believing that they are getting a bargain by buying products from Home Depot on sale and at a substantial and deep discount. Defendant does so with the intention of promoting sales, increasing sales revenue, and for the purpose of disposing of products that it has in inventory. For many products, Defendant does not offer or sell the products at the reference price for a substantial time, if at all. The reference price is, therefore, artificially inflated, and the advertised discounts are deceiving.

**2.      The Reference Prices are not the Prevailing Market Price of the Products**

29.     Additionally, the reference prices, or "former" prices, that Defendant advertises are not the prevailing market price of the products.

30.     On information and belief, Defendant's advertised former prices are higher than the prevailing market prices for the identical products. In competitive markets, the actual prices offered by vendors selling the same item tend to converge on the prevailing market price.

31.    For example, from at least September 2023 through January 2024 Home Depot has claimed that the former or "regular" price for a GE 7.2 cu. Ft. Electric Dryer in White with Wrinkle Care ("GE Electric Dryer") was $779. However, since at least August 2023 through December 2023, one of Home Depot's primary competitors in the retail home appliance market, Best Buy, sold that same dryer for, at most, $549—sometimes reducing the price even further to $499. Similarly, Orville's also sold that same dryer from at least November 2023 through December 2023 for $497.

32.    Given that retailers were selling the same GE Electric Dryer as Home Depot in Fall 2023 and early-Winter 2024 for less than $550, it is evident that Home Depot's reference price of $779 was not, in fact, the prevailing market price.

### C.    Home Depot's Intentions Underlying Its False-Reference Pricing Scheme

33.    Defendant knew or should have known that its use of false reference prices were misleading consumers to believe that they were receiving a "bargain" when they, in fact, were not.

34.    Moreover, Defendant intended for reasonable consumers to understand the "sale" prices to be prices that Home Depot had reduced from Home Depot's "regular" or "former" prices. Defendant intentionally failed to disclose to Plaintiffs and class members the truth about its reference prices, i.e. that they were fabricated,

and that Defendant never offered the items at the reference prices during the relevant statutory period. Defendant intentionally sought to convey to consumers that they were receiving a true markdown.

35.   Defendant intentionally and deliberately implemented a pricing scheme that was designed to mislead its customers to believe that the reference prices it used were: (a) the prices that the advertised product was formerly listed at; and/or (b) the prevailing market rate of the advertised product.

### D.   Plaintiffs' Experiences

#### *Plaintiff Culbertson's Purchase from Home Depot*

36.   On January 2, 2024, Plaintiff Culbertson visited the Home Depot website and purchased a GE Electric Dryer. Based on and consistent with archived copies of the website, Plaintiff Culbertson saw on the listing page a former price of $779.00 which was stricken through and adjacent to a message that read "See Lower Price in Cart." He added the GE Electric Dryer to his cart then proceeded to purchase the product for $528.00 with the understanding that he was receiving all advertised discounts off the former price charged by Home Depot. The product was shipped to his address in San Mateo County, California.

37.   Plaintiff Culbertson relied on the representation of Home Depot's reference pricing and believed that it was actually a former price in the marketplace within the statutory period. He relied on the fact that the GE Electric Dryer was

discounted, and that he was getting a "deal." This made the purchase more attractive and more urgent. Defendant led him to believe he was getting a discount on an item worth $779.00, but this was not the prevailing market price for the statutory period.

38.    That sale was false and misleading. Based on archived copies of Home Depot's website, the product was regularly offered on the website at a "discounted" price.

    a.    09/01/2023 - $548.00 (sale price) / $779.00 (former price)
    b.    10/02/2023 - $548.00 (sale price) / $779.00 (former price)
    c.    11/30/2023 - $498.00 (sale price) / $779.00 (former price)
    d.    01/02/2024 - $528.00 (sale price) / $779.00 (former price)

39.    Plaintiff Culbertson thus viewed and relied on the website's purported then-current and limited time "sale." He relied on the above representations that the product (1) had a former price of the advertised strikethrough price, and (2) had been offered for sale *on the website* at the stated reference price, in the recent past, at least for the statutory period, on a regular basis, and for a substantial time. And he relied on the representations that the product was truly on sale and being sold at a substantial markdown.

40.    The sale was also false and misleading because, based on archived copies of Orville's and Best Buy's website, the prevailing market price for the same GE Electric Dryer was never $779.00.

41.    Orville's offered the GE Electric Dryer on its website at the following

prices:

    a.    11/11/2023 - $497.00
    b.    11/30/2023 - $497.00
    c.    12/01/2023 - $497.00

42.    Best Buy offered the GE Electric Dryer on its website at the following prices:

    a.    08/9/2022 - $579.99
    b.    08/18/2023 - $549.99
    c.    08/25/23 - $549.99
    d.    09/02/2023 - $549.99
    e.    09/15/2023 - $549.99
    f.    09/21/23 - $549.99
    g.    10/06/2023 - $549.99
    h.    11/03/2023 - $499.99
    i.    11/4/2023 - $499.99
    j.    11/10/2023 - $499.99
    k.    11/17/2023 - $499.99
    l.    11/23/2023 - $499.99
    m.    12/05/2023 - $499.99
    n.    12/14/2023 - $529.99
    o.    12/20/2023 - $529.99

43.    The above-listed product Plaintiff Culbertson purchased was not substantially marked down or discounted, and any discount he received had been grossly exaggerated.

44.    Moreover, for at least the three-month period prior to Plaintiff Culbertson's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold on its website at the reference prices.

18

45.    Plaintiff Culbertson would not have purchased the item at the advertised price, or would not have paid as much as he did, had Defendant been truthful—he would have paid less at another retailer, or would have waited for the product to *actually* go on sale. Plaintiff Culbertson was persuaded to make his purchase because of the misleading sale based on false reference prices.

46.    Plaintiff Culbertson continues to be interested in purchasing home goods and products that are available for purchase at Home Depot and offered at discounted prices, but he will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from Home Depot unless he has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Culbertson cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's false sales practices are perpetual.

### Plaintiff Gonzalez's Purchase from the Website

47.    On January 2, 2024, Plaintiff Gonzalez visited Home Depot's website and purchased a GE 24 in. Built-In Tall Tub Top Control Fingerprint Resistant Stainless-Steel Dishwasher ("GE Dishwasher"). Based on and consistent with archived copies of the website, Plaintiff Gonzalez saw on the listing page a former or regular price of $829.00 which was stricken through, and adjacent to a sale price

of $478.00. She then proceeded to purchase the product for $478.00 with the understanding that she was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was shipped to her address in Merced County, California.

48.     Plaintiff Gonzalez relied on the representation of Home Depot's reference pricing and that it was actually a former price in the marketplace within the statutory period. She relied on the fact that the GE Electric Dryer was discounted, and that she was getting a "deal." This made the purchase more attractive and more urgent. Defendant led her to believe she was getting an item worth $829.00, but this was not the prevailing market price for the statutory period.

49.     That sale was false and misleading. Based on archived copies of Home Depot's website, the product was regularly offered on the website at a "discounted" price.

    a.    06/02/2023 - $478.00 (sale price) / $829.00 (former price)
    b.    11/29/2023 - $478.00 (sale price) / $829.00 (former price)
    c.    01/02/2024 - $478.00 (sale price) / $829.00 (former price)

50.     Plaintiff Gonzalez thus viewed and relied on the website's purported current and limited-time sale promotion. She relied on the above representations that the product (1) had a former and regular price of the stated strikethrough price, and (2) had been offered for sale *on the website* at the stated strikethrough price, in the recent past, on a regular basis and for a substantial time. And she relied on the

representations that the product was truly on sale and being sold at a substantial markdown and discount for a limited time.

51.    A screenshot of the product listing dated April 30, 2024 is below. As of that date, the product is still on sale for $478.00 with a strikethrough price of $829.00.



52.    The sale was also false and misleading because, based on archived copies of various retailers' websites who also sold the same GE Dishwasher, the prevailing market price of the GE Dishwasher was never $829.00.

        a.    ABW Appliance, 06/01/2023 - $478.00
        b.    Best Buy, 06/09/2023 - $479.00
        c.    GE Appliances, 08/01/23 - $532.00
        d.    Best Buy, 08/12/2023 - $479.00
        e.    GE Appliances, 09/16/2023 - $532.00
        f.    American Freight, 09/24/2023 - $346.11

g.    US Appliance, 10/04/2023 - $531

h.    Best Buy, 12/27/2023 - $479.00

53.    The above-listed product Plaintiff Gonzalez purchased was not substantially marked down or discounted, and any discount she received had been grossly exaggerated.

54.    Moreover, for at least the three-month period prior to Plaintiff Gonzalez's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold on its website at the advertised reference prices.

55.    Plaintiff Gonzalez would not have purchased the item at the advertised "sale" price, or would not have paid as much as she did, had Defendant been truthful— she would have paid less at another retailer, or would have waited for the product to actually go on sale. Plaintiff Gonzalez was persuaded to make her purchase because of the misleading "sale" based on false reference prices.

56.    Plaintiff Gonzalez continues to be interested in purchasing home goods and products that are available for purchase at Home Depot and offered at discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from Home Depot unless she has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Plaintiff Gonzalez cannot know whether Defendant's former and regular

prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

### Plaintiff Condon's Purchase from the Website

57.   On October 16, 2022, Plaintiff Condon visited Home Depot's store in Oakland, California and purchased a GE 30-inch Electric Range ("GE Range"). Plaintiff Condon saw that the GE Range was on sale. On information and belief, Plaintiff Condon saw a sign with a former or regular price of $649.00 which was stricken through, and adjacent to a "sale" price of $528.00. She then proceeded to purchase the product for $528.00 with the understanding that she was receiving all advertised discounts off the former and regular price charged by Home Depot. The product was delivered to her address in Alameda County, California.

58.   Plaintiff Condon relied on the representation of Home Depot's reference pricing and that it was actually a former price in the marketplace within the statutory period. She relied on the fact that the GE Range was discounted, and that she was getting a "deal." This made the purchase more attractive and more urgent. Defendant led her to believe she was getting an item worth $649.00, but this was not the prevailing market price for the statutory period.

59.   That sale was false and misleading. The product was regularly offered both in-store and on Home Depot's website during the three months immediately

preceding Ms. Condon's purchase. On information and belief, the price for the GE Range was the same on Home Depot's website as it was in-store during the relevant time period.

60.     Plaintiff Condon thus viewed and relied on Defendant's purported current and limited-time sale promotion. She relied on the above representations that the product (1) had a former and regular price of the stated strikethrough price, and (2) had been offered for sale both in-store and on the website at the stated strikethrough price, in the recent past, on a regular basis and for a substantial time. And she relied on the representations that the product was truly on sale and being sold at a substantial markdown and discount for a limited time.

61.     The sale was also false and misleading because, based on archived copies of various retailers' websites who also sold the same GE Range, the prevailing market price of the GE Dishwasher was never $649.00 during the three months immediately preceding Ms. Condon's purchase and longer.

       a.     GE Appliances, 07/13/22 - $529.00
       b.     GE Appliances, 09/25/22 - $529.00
       c.     Best Buy, 04/10/2022 - $479.00
       d.     Best Buy, 09/07/2022 - $499.00
       e.     Best Buy, 09/28/2022 - $499.00
       f.     Best Buy, 10/12/2022 - $499.00

62.     The above-listed product Plaintiff Condon purchased was not substantially marked down or discounted, and any discount she received had been

grossly exaggerated.

63.     Moreover, for at least the three-month period prior to Plaintiff Condon's purchase, and on information and belief months and years more, Defendant very rarely, if ever, offered any of the discounted items sold in its stores at the advertised reference prices.

64.     Plaintiff Condon would not have purchased the item at the advertised "sale" price, or would not have paid as much as she did, had Defendant been truthful— she would have paid less at another retailer, or would have waited for the product to actually go on sale. Plaintiff Condon was persuaded to make her purchase because of the misleading "sale" based on a false reference price.

65.     Plaintiff Condon continues to be interested in purchasing home goods and products that are available for purchase at Home Depot and offered at discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from Home Depot unless she has assurances that Home Depot's deceptive pricing practices have been rectified. Absent injunctive relief, Plaintiff Condon cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

**E.     Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value**

66.     Deceptive pricing practices have drawn the scrutiny and analysis of mainstream media and several academic studies.

67.     Retailers like Defendant can benefit substantially from false discounting schemes because "framing a price increase as a discount can not only allow the firm to get **higher margins**, but also **increase sales**." Staelin et al., *Competition and the Regulation of Fictitious Pricing*, 87 J. MKTG., 826, 835 (2023) (emphasis added).

68.     Retailers "mark up the prices and then offer seemingly deep discounts to make the deals look more attractive," reports Jie Zhang, a professor of marketing at the University of Maryland. "This is a form of deceptive pricing."[5] This tactic is meant to trick shoppers into thinking they are getting a better price than usual.

69.     Consumers' Checkbook, a nonprofit consumer-advocacy publication, tracked the prices of more than 25 items at 24 major retailers over 33 weeks last year. Researchers concluded that at eight companies, more than half of the items they tracked "were offered at false discounts every week or almost every week we

---

[5] Jaclyn Peiser, *A common, illegal tactic retailers use to lure consumers*, The Washington Post (Nov. 21, 2023), available: https://www.washingtonpost.com/business/2023/11/21/fake-sale-deceptive-pricing/ ("Washington Post Article").

checked."[6]

70.    Luc Wathiue, a professor of marketing at Georgetown University, says that this is an effective technique because shoppers usually aren't tracking prices that closely. "As consumers, we don't know what the right price should be, so we use cues in the environment to determine whether the price that we have in front of us is advantageous."[7]

71.    "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[8] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[9]

72.    "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[10]

---

[6] *See id.*

[7] *See id.*

[8] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (Spring 1992). "[P]rice is materially utilized in the formation of perceptions of the product's value and influences the decision to purchase the product or to continue to search for a lower price." *Id.*; Patrick J. Kaufmann et al, *Deception in Retailer High-Low Pricing: A "Rule of Reason" Approach*, 70 J. RETAILING 115, 118 (1994) ("[R]eference to a retailer's normal or regular price in retail sale price advertising provides the consumer with information used to determine perceived value").

[9] *Id.* at 56.

[10] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. OF CONSUMER AFFAIRS, Vol. 36, No. 2, at 287 (Winter 2002).

According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[11]

73.     According to Jie Zhang, the "psychological effect works" of tricking consumers into believing that they are receiving a good deal. "It's a very strong and robust effect, so I'm not surprised those retailers actually resorting to this tactic, because time and time again it works."[12]

74.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[13]

75.     "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[14]

76.     "[R]eference prices are important cues consumers use when making the

---

[11] *Id.*

[12] Washington Post Article.

[13] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (January 2011).

[14] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

decision concerning how much they are willing to pay for the product."[15] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[16]

77.     According to a OnePoll survey, 67% of respondents said the cost-of-living pressures made them more desperate to find the best deals, and 71% believe they are "saving money" by buying products that are on sale, even if the price reduction is not genuine.[17]

78.     Additionally, a product's "price is also used as an indicator of product quality."[18]  In other words, consumers view Defendant's deceptive advertised reference prices as a proxy for product quality.

79.     As such, research confirms that deceptive advertising through false reference pricing is intended to, and, in fact does, influence consumer behavior.  By

---

[15] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. OF APP'D BUS. RES. 1 (1990).
[16] *Id.*
[17] Megan Tatum, *Bargain debasement: why are 'fake discounts' on the rise?*, Raconteur (June 23, 2023), available: https://www.raconteur.net/economy-trends/fake-discounts-online-retail.
[18] Grewal, *supra* note 8, at 54; see also Richard Thaler, *Mental Accounting and Consumer Choice*, MARKETING SCIENCE 4, no. 3 (1985): 199-214, p. 212 ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, consumers purchase items they otherwise would not have, and/or purchase products from a specific retailer believing that they are receiving a "discount."

### F.   Consumers Suffered Economic Harm

80.    Based on Defendant's advertisements, reasonable consumers would expect that the listed former prices are the "regular" prices at which Defendant sells that product; that these are former prices that Defendant sold the product at before the discount was introduced, and that these are the prevailing prices at Defendant and/or other nationwide retailers. Put another way, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the "regular" price to get the item and did not have the opportunity to get a discount from that "regular" price, through a sale or otherwise.

81.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

82.    Consumers, including Plaintiffs and putative class members, paid a "price premium" for the products that they otherwise would not have paid if the reference prices that Defendant used were omitted from the product listings. Or

consumers would not have purchased the products at all, and Defendant would not have been able to charge the prices it ultimately did.

83.    Consumers who are presented with sale prices or discounts are more likely to make the purchase. Research shows that more than 64% of online consumers wait to buy things until they go on sale. Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase.[19] As such, the lure of getting an item at a discount impacts a consumer's decision as to whether to purchase a product or not.

84.    Accordingly, Home Depot's advertisements harm consumers by inducing them to make purchased based on false information. In this same vein, Home Depot's advertisements artificially increase consumer demand for Home Depot's products, putting upward pressure on the prices that Home Depot can charge for its products. Consequently, Home Depot can charge a price premium for its products that it would not be able to charge absent the misrepresentations about the former prices. Home Depot's misrepresentations caused Plaintiffs to pay more for the products they purchased than they otherwise would have.

---

[19] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, invesp (June 16, 2024), available: https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

### G.    Defendant's Deceptive Pricing Practice Violates the Law

85.    The Federal Trade Commission Act ("FTCA") prohibits the pricing scheme employed by Defendant regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price. Under 16 C.F.R. § 233.1:

> (a)    If the former price is set forth in the advertisement, **whether accompanied or not** by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

86.    The FTCA also prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes like the ones employed by Defendant are deceptive practices that violate the FTCA.

87.    Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

> (a)    One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the **former price** is the actual, bona fide price at which the article was offered to the public on a **regular basis** for a **reasonably substantial period of time**, it provides a

legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price*** was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a ***reasonably substantial period of time***, in the ***recent***, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c)     The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50— and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d)     Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some ***remote period in the past***, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduced.

88.     The FTCA also prohibits retailers from offering fake limited duration sales. See 16 C.F.R.§233.5 which provides:

> [Retailers] should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer.
> …
>
> They should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited.

89.     Plaintiffs both purchased their products online from their residences in California. Defendant's pricing practices also violate California law. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on "sale," when it actually is not.

90.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

91.     Further, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for,

existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

92.   Additionally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. Cal Bus. & Prof. Code § 17200.

93.   As described herein, Defendant makes untrue and misleading statements about its prices. Defendant advertises "regular" prices that are not its true "regular" prices, or former prices, and were not the prevailing market price in the three months immediately preceding the advertisements. Additionally, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of site-wide discounts and discounts on categories of items and individual items, and the amounts of price reductions resulting from those discounts. Defendant engaged in unlawful, unfair, and deceptive business practices by virtue of this deceptive pricing scheme.

## H.   Class Action Allegations

94.   Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seek certification of the following class:

**Nationwide Class:**

All persons who purchased one or more items from Home Depot during the Class Period at a discount from an advertised higher reference price (the "Nationwide Class" or "Class").

**California Subclass:**

All persons in California who purchased one or more items from Home Depot during the Class Period at a discount from an advertised higher reference price (the "California Subclass").

95.    Excluded from the Class are Defendant, as well as its the officers, directors, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action.  Also excluded from the Class are persons or entities that purchased products from Defendant for purposes of resale.

96.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.[20]

97.    Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon,

---

[20] The Class Period begins at minimum 4 years from the date of filing of this action, but based on tolling, may extend beyond that date.

among other things, changing circumstances, or new facts obtained during discovery.

98.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are tens of thousands of members of the Class.

99.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class members because, inter alia, all Class members have been deceived (or were likely to be deceived) by Home Depot's false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

100.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex consumer class action litigation, and Plaintiffs and their counsel intend to vigorously prosecute this action. Plaintiffs have no antagonistic or adverse interest to those of the Class.

101.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class.

These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a. Whether, during the Class Period, Defendant advertised false reference prices on products offered on the website.

    b. Whether, during the Class Period, the original price advertised by Home Depot was the prevailing market price for the products in question during the three-month period preceding the dissemination and/or publication of the advertised former prices.

    c. Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on the website.

    d. Whether the products listed on Defendant's website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

    e. Whether Home Depot's alleged conduct constitutes violations of the laws asserted.

    f. Whether Home Depot engaged in false or misleading advertising.

    g. Whether Defendant's deceptive pricing scheme using false reference

prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.

h.  Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500, et seq.

i.  Whether Defendant's conduct violated the Georgia Fair Business Practices Act (O.C.G.A. § 10-1-393).

j.  Whether Defendant's use of false reference prices on products offered on their website during the Class Period was material.

k.  Whether Defendant had a duty to conspicuously disclose to customers that the reference prices were false former/regular prices.

l.  Whether the members of the Class are entitled to damages and/or restitution.

m.  Whether injunctive relief, including public injunctive relief, is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

n.  Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

o. Whether members of the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

102. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the damages that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-

party Class members to protect their interests.

103.   **Substantial Similarity.** The products at issue in the action are substantially similar in all material respects. Namely, the products were all advertised with a false reference price, advertised with a strikethrough reference price, and advertised with a false sale price. The products are also all sold by Defendant on the website and in-store and fall under the umbrella of home goods and home improvement products, including appliances, tools, outdoor equipment, home equipment, furniture, garden equipment, and many other categories.

104.   **Ascertainability.** Upon information and belief, Home Depot keeps extensive records of its customers through their online sales data, as well as through, inter alia, general marketing programs. Home Depot has one or more databases through which all, or a significant majority of, Class members may be identified and ascertained, and they maintain contact information, including email and home address, through which notice of this action could be disseminated in accordance with due-process requirements.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

105.   All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiffs and Class members could not have reasonably discovered Defendant's practice of running perpetual and/or extended sales, based on deceptive reference prices and deceptive sale prices, at any time prior to

commencing this class action litigation.

106.   A reasonable consumer viewing the website on multiple occasions would simply believe that a product is on sale for the time period represented on the website. Short of visiting and checking the website for months continuously, or using an internet archival device, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false and misleading. Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation, which reasonable consumers would not be on notice to have to do.

107.   Plaintiffs did not learn of Defendant's deceptive practices alleged herein until commencing this action.

108.   As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION

### FRAUD (INTENTIONAL MISREPRESENTATION AND OMISSION)

**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the California Subclass)**

109.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

110.   Plaintiffs plead this claim under Georgia law.

111.   As alleged more fully above, Defendant made false or misleading

statements of fact and material omissions concerning the existence of and the amounts of price reductions. These representations were false because: (a) Defendant falsely represents the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale; and (b) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the products were previously sold on the website at the higher reference prices on a regular basis for a reasonably substantial period of time. Defendant knew that these representations were false at the time that it made them and/or acted recklessly in making the misrepresentations.

112. Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website and in-store were not prices at which Defendant's items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendant's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Reasonable consumers were likely to be deceived by Defendant's failure to disclose material information.

113. Defendant knew that the items Plaintiffs and the Class purchased had rarely, if ever, been offered or sold on the website at the substantially higher reference price in the recent past.

114.   Defendant's representations were made with the intent that Plaintiffs and the Class would rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

115.   Defendant's conduct was made with the intent to maximize its profits at the detriment of reasonable consumers.

116. Defendant intended that Plaintiffs and the Class rely on these representations. Plaintiffs and the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

117.   Had the omitted information been disclosed, Plaintiffs and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they ultimately did.

118.   As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages because (a) they would not have purchased Home Depot's products if they had known that the representations were false, and/or (b) they

overpaid for the products because the products were sold at a price premium due to the misrepresentations.

119.   Plaintiffs and the Class are also entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions were fraudulent because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's conduct was made with malice because Defendants acted with the intent to and did cause injury to Plaintiff and the Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiff and the Class.

## SECOND CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the California Subclass)**

120.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

121.   Plaintiffs plead this claim under Georgia law.

122.   As alleged more fully herein, Defendant made false or misleading statements and/or material omissions of fact concerning the existence of and the amounts of price reductions because, as previously explained: (a) Defendant falsely

represents the products as on sale for limited time when in truth a new substantially

equivalent sale is promptly instituted after the expiration of an existing sale; and (b)

the false reference prices advertised in connection with products misled and continue

to mislead customers into believing the products were previously offered for sale

and/or sold at the higher reference prices on a regular basis for a reasonably

substantial period of time. When Defendant made these misrepresentations, it knew

or should have known that they were false. Defendant had no reasonable grounds

for believing that these representations were true when made.

123.   Defendant had a duty to conspicuously disclose the truth about its

pricing deception, including that: (a) the reference prices advertised and published

on the website were not prices at which Defendant's items had been offered and/or

sold on the website in the recent past on a regular basis for a reasonably substantial

period of time; and (b) Defendant's products rarely (if ever) were offered or sold

anywhere at the advertised reference prices on a regular basis for a reasonably

substantial period of time; and (c) the expiration of any given sale would be followed

by a substantially equivalent sale.

124.   Defendant knew its sales were falsely advertised as being of limited

duration. Defendant also knew or should have known that the reference prices were

not the prevailing market prices. And Defendant knew that the items Plaintiffs and

the Class purchased had rarely, if ever, been offered or sold on the website at the

substantially higher reference price in the recent past.

125.   Defendant had no good faith or reasonable basis to believe that its representations were true when made.

126.   Defendant's representations were made with the intent that Plaintiffs and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

127. Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e. a reasonable consumer would consider them important in deciding whether to buy Home Depot's products.

128.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damage and losses to Plaintiffs and Class members.

129.   Defendant engaged in this fraud to the Plaintiffs and the Class's detriment to increase Defendant's own sales and profits.

130.   Plaintiffs and the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

131.   Had the omitted information been disclosed, Plaintiffs and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

132.   As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages because (a) they would not have purchased Home Depot's products if they had known that the representations were false, and/or (b) they overpaid for the products because the products were sold at a price premium due to the misrepresentations.

## THIRD CAUSE OF ACTION

## VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT
## (O.C.G.A. § 10-1-393)

### (On Behalf of Plaintiffs and the Nationwide Class)

133.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

134.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Home Depot for violations of the Georgia Fair Business Practices Act ("FBPA").[21]

135.   Plaintiffs bring this action as members of the consuming public who

---

[21] O.C.G.A. § 10-1-393.

have suffered damages because of Home Depot's deceptive acts and practices. These practices have had and have the potential to have a harmful effect on reasonable consumers.

136.   Under the FBPA, unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are unlawful.

137.   Home Depot is an entity that can be sued under the FBPA.

138.   The Plaintiffs, and the members of the proposed Class, are natural persons and thus "consumers" within the meaning of the statute.

139.   Plaintiffs have satisfied the statute's demand requirement.

140.   Home Depot's false-reference pricing scheme described above is a practice intended to encourage consumer transactions—i.e., the sale of goods for household purposes—and is thus a "consumer act or practice" within the meaning of the statute.

141.   The FBPA enumerates deceptive trade practices giving rise to liability under the statute, but also states that the scope of unfair and deceptive trade practices under the statute is not limited to the specific practices listed. Defendant's false-reference pricing scheme described above violates at least one of the specifically prohibited practices because, in perpetrating this scheme, Home Depot has repeatedly "ma[de] false or misleading statements concerning the reasons for,

existence of, [and] amounts of price reductions."[22] Furthermore, by perpetrating the false-reference pricing scheme described above, Defendant engaged in a course of deceptive trade practices under the statute's general definition of prohibited practices.[23]

142.   Home Depot engaged in the deceptive false-reference pricing scheme described above intentionally, motivated by its desire to increase its sales and artificially inflate the prices of its products at the expense of consumers.

143.   Home Depot's deceptive false-reference pricing scheme did in fact artificially inflate the prices of its products and thereby caused financial damage to the Plaintiffs and the members of the proposed Class.

144.   Home Depot continues to engage in false-reference pricing as of the date of the filing of this Complaint.

### FOURTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**
**(On Behalf of Plaintiffs and the California Subclass)**

145.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

---

[22] O.C.G.A. § 10-1-393(b)(11).
[23] *Id.* § 10-1-393(a).

146.   Plaintiffs bring this cause of action on behalf of themselves and members of the California Class.

147.   California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

148.   Defendant has violated California's UCL by engaging in fraudulent, unfair and unlawful conduct (i.e. violating each of the three prongs of the UCL).

***Fraudulent***

149.   Under the UCL, a business act or practice is "fraudulent" or deceptive if it actually deceives or is likely to deceive members of the consuming public.

150.   Defendant's conduct as alleged above is likely to deceive reasonable consumers. As alleged in detail above, Defendant affirmatively misrepresented that its products were on sale by artificially representing much higher reference prices, or "strikethrough" prices which gave the illusion of a discount. Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price.

151.   Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the recent past for

a reasonably substantial period of time, but in truth, the products never (or rarely) were offered or sold at the reference prices. Reasonable consumers were likely to be deceived by this material omission.

152.   Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

153.   Defendant's representations were materially misleading to Plaintiffs and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions of purported limited duration, as employed by Defendant's high-pressure sales tactics.

154.   Plaintiffs relied on Defendant's misleading representations and omissions, as detailed above, believing that they were receiving a genuine discount of limited duration from a prevailing and genuine regular and former price.

155.   Absent Defendant's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

156.   Had the omitted information been disclosed, Plaintiffs would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiffs would not have purchased the items they purchased from Defendant, or, at

minimum, would not have paid as much for the items as they did.

157.   As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiffs and members of the Class.

*Unfairness*

158.   Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

159.   As alleged in detail above, Defendant committed "unfair" acts through its deceptive marketing tactics which gave consumers the false impression that their products were regularly listed or sold on the website for a substantially higher price in the recent past than they actually were and, thus, consumers were lead to believe that Defendant's products were worth more than they were.

160.   Defendant violated established public policy by violating the CLRA, the FAL and the FTCA as alleged herein. The unfairness of this practice is tethered to a legislatively declared policy (i.e. that of the CLRA, the FAL, and the FTCA).

161.   The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to mispresenting the price of a consumer product.

162. Defendant's conduct was and continues to be of no benefit to reasonable consumers. It is misleading, unfair, unlawful, and is injurious to consumers. It is also against public policy, as it harms fair competition. For example, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Similarly, the Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a).

163. Misleading consumer products only injures healthy competition and harms consumers. Defendant is luring sales away from sellers who compete fairly on price and do not promote false former prices and fake sales of limited duration.

164. The harm to Plaintiffs and members of the California Subclass outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

165. As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the

proposed Class.

### *Unlawful*

166.   A cause of action may be "unlawful" for purposes of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

167.   By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations. Specifically, as detailed herein, Defendant violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code section 17501.

*       *       *

168.   Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

169.   A legal remedy is not adequate is it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims.

170.   In the alternative to claims seeking remedies at law, Plaintiffs and class members allege that there is no plain, adequate, and complete remedy that exists at

law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

171.   Equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. A jury trial will take longer, and be more expensive, than a bench trial. Additionally, unlike damages, the Court's has broad discretion to fashion equitable relief, which can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

172.   Plaintiffs, on behalf of themselves and the members of the Class, seek restitution and restitutionary disgorgement of all moneys received by Defendant through the conduct described above.

173.   Plaintiffs, on behalf of themselves and the members of the Class, seek

a public injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiffs seek an injunction on behalf of themselves, the putative class of similar situated California residents, and the general public, prohibiting Home Depot from making material omissions and misrepresentations to the public about its deceptive pricing practices. Plaintiffs seek a public injunction requiring Home Depot to notify the public at large about its deceptive pricing practices, including through corrective advertising. The public injunction is essential to eradicating Home Depot's deceptive scheme. In the absence of an injunction, Home Depot will remain free to continue to mislead unsuspecting members of the public about its pricing scheme, causing consumers to believe they are getting items at a discount or sale price, when, in reality, they are not.

174.    Plaintiffs and class members are entitled to public injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing. The public injunctive relief will protect the public from Home Depot's deceitful marketing practices which misrepresent and omit material facts about Home Depot's pricing practices.

## **FIFTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE § 17500, et seq.**
**(On Behalf of Plaintiffs and the California Subclass)**

175.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

176.    Plaintiffs bring this cause of action on behalf of themselves and members of the California Class.

177.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

178.    The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

179.    A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

For the purpose of this article the worth or value of any ***thing advertised*** is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

180.    As used in Cal Bus. & Prof. Code § 17501:

- The term "advertised thing" refers to the exact same product offered— ***not*** an equivalent or similar product. *People v. Superior Ct.* (*J.C. Penney Corp.*)*,* 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '___% ***off***.'" 4 Cal. Code Regs., § 1301 (emphasis added).

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." Cal Bus. & Prof. Code § 17501.

181.    Defendant has violated, and continues to violate, Section 17500 of the Business & Professions Code by disseminating untrue and misleading advertisements over the internet and in stores to Plaintiffs and members of the California Class.

182. As explained above, Defendant regularly advertised false and misleading reference prices for the products offered for sale on the website and in its stores, including to Plaintiffs and members of the California Class. Defendant does this by, for example, crossing out a higher price or by displaying a discount price next to the "regular" price. Reasonable consumers would understand prices denoted as "regular" prices from which time-limited discounts are calculated to denote a "former" price of that product, i.e. the prices that Defendant charged before the limited time discount or sale went into effect.

183. Additionally, Defendant has violated, and continues to violate, Section 17501 of the Business & Professions Code by advertising former prices that were not the prevailing market price within three months immediately preceding the advertisements.

184. Defendant rarely, if ever, offered products on the website at the reference prices within the three months immediately preceding the publication of the reference prices. Moreover, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication, as demonstrated by a sampling of competitor's pricing of the same products.

185. On information and belief, Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three

months. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were ever offered at all.

186.   Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were and were being offered at discounted rates.

187.   Defendant knew that its advertised reference prices for the products sold on its website were untrue and/or misleading. Defendant knew that such products had rarely, if ever, been offered or sold on the website or in store at the reference prices.

188.   Defendant's practices were intended to induce reliance, and Plaintiffs saw, read, and reasonably relief on the misrepresentations when purchasing Home Depot's products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decisions.

189.   Additionally, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e. a reasonable consumer would consider them important in deciding whether to buy Home Depot's products.

190.   As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the California Class have suffered injury in fact and have lost money. Plaintiff requests restitution and an injunction prohibiting Defendant from continuing its false and misleading advertising practices in violation of California law in the future.

191.   Plaintiff and California Class members are entitled to injunctive relief, including public injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing. Plaintiffs seek an injunction on behalf of themselves, the putative class of similar situated California residents, and the general public, prohibiting Home Depot from making material omissions and misrepresentations to the public about its deceptive pricing practices. Plaintiffs seek a public injunction requiring Home Depot to notify the public at large about its deceptive pricing practices, including through corrective advertising. The public injunction is essential to eradicating Home Depot's deceptive scheme. In the absence of an injunction, Home Depot will remain free to continue to mislead unsuspecting members of the public about its pricing scheme, causing consumers to believe they are getting items at a discount or sale price, when, in reality, they are not.

192.   In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that there is no plain, adequate, and complete remedy that

exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. A jury trial will take longer and be more expensive than a bench trial. Additionally, unlike damages, the Court's has broad discretion to fashion equitable relief, which can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA
### CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, et seq.
#### (On Behalf of Plaintiffs and the California Subclass)

193.    Plaintiffs re-allege and incorporate by reference all preceding

paragraphs as if fully set forth herein.

194. Plaintiffs bring this claim on behalf of themselves and members of the California Class.

195. The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

196. Plaintiffs and members of the California Class are "consumers" as defined in California Civil Code § 1761(d).

197. The products purchased by Plaintiff and the class are "goods" within the meaning of California Civil Code section 1761(a).

198. Defendant's sale of products on the website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e).

199. Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's products:

a. Representing that goods do have characteristics they do not actually

have (Cal. Civ. Code § 1770(a)(5));

b.  Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7));

c.  Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.  Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13)).

200.  With regards to section 1770(a)(5), (7), and (9), Defendant advertised and represented products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standard because: (a) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing (i) the merchandise was previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (ii) were valued in the market at the advertised "regular" price; and (b) Defendant falsely represents the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

201.  With respect to section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of

price reductions" because: (a) no true price reductions existed in that Defendant's merchandise was rarely, if ever, offered for sale and/or sold at the higher reference prices, let alone on a regular basis for a reasonably substantial period of time; (b) the reference prices Defendant advertised in connection with its products were not prevailing market prices because, on information and belief, the products were not sold elsewhere at the reference prices for a reasonably substantial period of time; and (c) Defendant falsely represents the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

202.   Additionally, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website were not prices at which Defendant's items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendant's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.

203.   Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew or should have known through the exercise of reasonable care that these statements were false and misleading.

204.   Defendant's misrepresentations were intended to induce, and did induce, reliance. Plaintiffs saw, read, and reasonably relied on the misrepresentations when purchasing Home Depot's products.

205.   Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decisions. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they did. Plaintiffs and the California Class's reliance was a substantial factor in causing them harm.

206.   Had the omitted information been disclosed, Plaintiffs and the California Class reasonably would have been aware of it and behaved differently. Among other things, Plaintiffs and the California Class would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

207.   On May 22, 2024, Plaintiffs, through counsel, provided notice to Defendant pursuant to Cal. Civ. Code § 1782(a) via certified mail, but the 30-day response period has not elapsed. Thus, Plaintiffs claim no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive damages under the CLRA. At this time, Plaintiffs seek only injunctive or other equitable relief under the CLRA as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully pray for following relief:

a. Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

b. An award to Plaintiffs and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendant obtained from Plaintiffs and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c. An injunction, including public injunctive relief as described herein, ordering Defendant to cease the false advertising and unfair business practices complained of herein;

d. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

e. An award of nominal, punitive, and statutory damages where available;

f. Reasonable expenses and attorneys' fees;

g. Pre- and post-judgment interest, to the extent allowable; and

    h.  For such further relief that the Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs, individually and on behalf of the proposed Class, demand a trial by jury for all claims so triable.

Date: June 19, 2024              Respectfully submitted,

by:    <u>/s/ Justin T. Holcombe</u>
        Justin T. Holcombe
        Georgia Bar No. 552100
        jholcombe@skaarandfeagle.com
        Kris Skaar
        Georgia Bar No. 649610
        kskaar@skaarandfeagle.com
        **SKAAR & FEAGLE, LLP**
        133 Mirramont Lake Drive
        Woodstock, GA  30189
        770 / 427-5600
        404 / 601-1855 fax

        James M. Feagle
        Georgia Bar No. 256916
        jfeagle@skaarandfeagle.com
        Cliff R. Dorsen
        Georgia Bar No. 149254
        cdorsen@skaarandfeagle.com
        **SKAAR & FEAGLE, LLP**
        2374 Main Street,  Suite B
        Tucker, GA 30084
        404 / 373-1970
        404 / 601-1855 fax

Jonathan Shub
Samantha E. Holbrook *(pro hac vice* forthcoming)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
*jshub@shublawyers.com*
*sholbrook@shublawyers.com*

*Attorneys for Plaintiffs and the Class*